UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                              Case No.: 1-04-20061-dem

PHYLLIS GAFTICK,                         Chapter 7

                    Debtor.
--------------------------------------------------------x


## DECISION AND ORDER


APPEARANCES:

David J. Doyaga Sr., Esq.
Chapter 7 Trustee
16 Court Street, Suite 2300
Brooklyn, New York 11241

Charles F. Vihon, Esq.
Attorney for We the People of Sheepshead Bay, New York, Inc.
          and We the People Forms and Service Centers USA, Inc.
4738 Howard Avenue
Western Springs, Illinois 60558

Richard Lubetzky, Esq.
Attorney for We the People of Sheepshead Bay, New York, Inc.
          and We the People Forms and Service Centers USA, Inc.
1875 Century Park East- Suite 600
Los Angeles, California 90067


                    DENNIS E. MILTON
                United States Bankruptcy Judge


            On July 8, 2004, Phyllis Gaftick ("Gaftick") filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code.  On March 18, 2005, David J. Doyaga, Sr., the Chapter

7 trustee (the "Trustee") and Gaftick (collectively, the "Movants") filed a joint application for

Orders pursuant to Section 110 of the Bankruptcy Code (the "Application") in which they sought

sanctions against We the People of Sheepshead Bay, New York, Inc. ("WTP– SB") and We the

People Forms and Service Centers USA, Inc. ("WTP– USA") (collectively, the "Respondents"). Specifically, the Movants sought an order: (1) directing WTP– SB and WTP– USA to disgorge fees pursuant to Section 110(h)(2) and authorizing Gaftick to exempt said disgorged funds; (2) directing WTP– SB and WTP– USA to cease conduct which amounted to the unauthorized practice of law[1]; and (3) finding that WTP–SB and WTP–USA committed fraudulent, unfair or deceptive acts pursuant to Section 110(i) and certifying such findings and violations to the District Court.

The Respondents asserted that (1) WTP–USA was not subject to the rules and sanctions prescribed in Section 110 because WTP–USA was not a bankruptcy petition preparer as the term is defined in Section 110(a)(1); (2) WTP–USA could not be held responsible for the allegedly unauthorized acts of WTP–SB's employees; (3) they had not engaged in the unauthorized practice of law; and (4) they had not committed any fraudulent, unfair or deceptive acts.

As set forth more fully below, the Court finds that the services the Respondents rendered to Gaftick had no value and directs that (i) the Respondents disgorge Two Hundred Twenty-Nine Dollars ($229.00) to Gaftick under Section 110(h)(2) (ii) of the Bankruptcy Code. The Court further finds that the Respondents collected a money order in the amount of Two Hundred Nine Dollars ($209.00) from Gaftick made payable to the Bankruptcy Court for the filing fee in connection with the Debtor's bankruptcy petition and directs that WTP–SB and WTP–USA shall be fined, jointly and severally, Five Hundred Dollars ($500.00) for violating

---

[1]    The Movants have acknowledged that the relief sought under this part of the Application can be obtained only through commencement of an adversary proceeding.  Accordingly, this part of the Application is denied without prejudice.

Section 110(g)(1) of the Bankruptcy Code.  The Court finds that the Respondents committed

fraudulent, unfair, and deceptive acts when they (i) advertised that their bankruptcy services cost

One Hundred Ninety-Nine Dollars ($199.00) when in fact their services cost Two Hundred

Twenty-Nine Dollars ($229.00); (ii) charged Gaftick a fee of Fifteen Dollars ($15.00) for a

process server although a process server was not used and (iii) deceived Gaftick into believing

that she was required to have the Respondents photocopy her petition. The Court hereby certifies

these violations to the United States District Court for the Eastern District of New York.

### JURISDICTION

This Court has subject matter jurisdiction over this controversy pursuant to 28

U.S.C. §§1334(b) and 157(b)(2) and the Eastern District of New York standing Order of

reference dated August 28, 1986.  This decision constitutes the Court's findings of facts and

conclusions of law to the extent Fed. R. Bank. P. 7052 requires.

### FACTUAL BACKGROUND

WTP–USA is a California based national franchisor of document preparation

franchises. *See* Transcript of Hearing of April 28, 2005 ("Tr. I"), pp. 5-6.  WTP– USA provides

its franchises with a license to use We The People's trademark while operating document

preparation service storefronts. Id.   WTP–SB, located at  3715 Nostrand Avenue, Brooklyn,

New York 11235, is one of WTP– USA's franchisees.  Ibid.

In June 2004, Gaftick read an article or advertisement regarding We The People's

bankruptcy preparation services in a local newspaper.  Of particular interest to Gaftick was the

price listed for these bankruptcy preparation services, One Hundred Ninety-Nine Dollars

($199.00). Id. at pp. 20-21.  From this, Gaftick believed that this would be the complete fee; she

3

recalled seeing no indication of any additional charges or any statement that the services for which additional charges would be assessed were optional. Id. at pp. 20-22.

Gaftick then visited WTP–SB's storefront office in Sheepshead Bay, Brooklyn. Id. While there, she read a brochure about these services, and paid Two Hundred Twenty-Nine Dollars ($229.00) to WTP–SB. On June 22, 2004, after paying her fee she signed a Bankruptcy Document Preparation Agreement. Id. at p. 23. This agreement provided, inter alia, that Gaftick retained the services of We the People to type bankruptcy forms for her and reflected that Gaftick paid One Hundred Ninety-Nine Dollars ($199.00) for document typing and Thirty Dollars ($30.00) for photocopying. Id. at pp. 28-30. *See also,* Movants' Exhibit 3. At this time, Gaftick received from WTP–SB a Customer Information Workbook; a Step by Step Guide to the Bankruptcy Workbook; a page listing and describing the exemptions available in New York State; and a pamphlet entitled "An Overview of Bankruptcy." Id. at p. 28.

Gaftick testified that she had trouble filling out parts of the workbook because she did not understand the terminology it contained. Tr. I, p. 45. In order to complete the workbook she called WTP-SB and spoke with an employee of WTP–SB, Eric Turya ("Turya"). Gaftick stated that Turya defined certain terminology used in the workbook for her. Id. at pp. 45-47. For example, when Gaftick asked Turya what "cash on hand" meant, he told her that it was "any money laying around." Id. at p. 45. Gaftick also testified that when she returned to the storefront office with her completed workbook, Turya reviewed it and explained to her that some of the exemptions that she had chosen were incorrect. Id. at p. 47. Gaftick further testified that Turya instructed her to cross out her exemption choices and then to write in the new ones and initialize her new choices. Id. at pp. 88-91. Gaftick explained that Turya also suggested that she change

some of the valuations of her personal property to reflect the price she paid for the property rather than its current value. Id. at pp. 98-99.   After she made these changes,  Turya transmitted the completed workbook to the WTP– USA location in order for the information contained in the workbook to be typed in the format of the Official Forms for the bankruptcy petition, schedules, statement of financial affairs and other documents required for a Chapter 7 filing.

On July 8, 2004, WTP–SB filed Gaftick's voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On March 18, 2005, the Trustee and Gaftick filed the Application, in which they sought sanctions against WTP– SB and WTP– USA, the Respondents.  On or about March 28, 2005, counsel for Respondents filed an Objection to the Application and Request for Rescheduling.  On April 5, 2005, the Court conducted a hearing and adjourned a hearing on the Application to April 21, 2005.  On April 18, 2005, counsel for Respondents filed a Response to the Application.  On April 21, 2005, the Court conducted a hearing, denied the Respondent's request for a continuance and scheduled an evidentiary hearing on the Application for April 28, 2005.  On April 28 and 29, 2005, the Court conducted the evidentiary hearing.  On July 11, 2005, following the receipt of the hearing transcripts and the parties' post-hearings submissions, the Court  reserved decision and took the matter under advisement.

## <u>ANALYSIS</u>

I.  The Court's Denial Of The Respondents' Oral Request For A Continuance On
The Return Date of Application Did Not Deny Respondents' Due Process Rights.

Respondents first claimed that their due process rights were denied when, on April 5, 2005 and April 28, 2005, the Court refused to allow a delay in the proceedings to permit

Respondents to conduct discovery.   Respondents next asserted that the Court erred in denying

their oral application to conduct a pre-hearing deposition of Gaftick, made for the first time on

April 5, 2005, the original return date for a hearing on the Application, because the request was

permissible under Rules 9013 and 9104 of the Federal Rules of Bankruptcy Procedure  (the

"Bankruptcy Rules").   Post Hearing Brief Of Respondents, pp. 2-3.

These claims are without merit.  Although Respondents correctly noted that the

Bankruptcy Rules are applicable to contested matters and govern the determination of their

request, they failed to recognize the limits of the applicability of these Rules.    Rule 9014(c)

specifically provides that the discovery rules in Part VII of the Bankruptcy Rules are applicable

to contested matters "unless the Court directs otherwise."

A review of the transcript of the proceedings of April 5, 2005 reflects the lack of

specificity in Respondent's request and that the Court properly exercised its discretion in

denying this request.  At the hearing, counsel for the Respondents requested a continuance to

enable them to conduct a deposition of Gaftick.  In response the Court noted:

> ...Before I would direct the deposition of the Gaftick, I will
> need to see responsive papers from you, counsel . . .

Transcript of hearing of April 5, 2005 at p. 6.   Counsel failed to file any papers in support of this

request or otherwise show that Respondents' request for a delay in the proceedings was

warranted based upon the prejudice Respondents would suffer if the matter were to go forward

as scheduled.  As it was, counsel was not prepared to go forward at a hearing until more than

three weeks later, and the Court scheduled the evidentiary hearing on the Application for April

28, 2005.  During this three week interval, counsel for Respondents did not submit a written

request for reconsideration of its request or informally seek to conduct a deposition of Gaftick in

6

the absence of a Court order.

In addition, the record fails to demonstrate that the Respondents were prejudiced by this Court's denial of continuance to conduct discovery.  *See* <u>Manley v. Ambase Corp.</u>, 337 F.3d 237,247 (2d Cir.2003).   As the Trustee correctly observed, the Respondents had a full and fair opportunity to ask whatever questions were appropriate of Gaftick at the hearing and have "had full control and possession of all of the documents related to the manner in which they prepared the Gaftick's Petition, Schedules, and Statement of Financial Affairs."  Reply to Respondents' Objections, July 8, 2005, p. 3.   Respondents' claim that their due process rights were violated when this Court denied their request for a delay in the proceedings to conduct a deposition of Gaftick must be denied.

II.  The Hearing Evidence Established That the Respondents Have
      Committed Violations of Section 110 of the Bankruptcy Code.

Prior to the enactment of the Bankruptcy Reform Act of 1994, it was recognized that  "widespread fraud and unauthorized practice of law" were rampant among non-attorneys who prepared bankruptcy petitions for consumer debtors.  <u>Ferm v. United States Trustee (In re Crawford)</u>, 194 F.3d 954,960 (9th Cir.1999), *cert denied*, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000).  To remedy this problem, Congress enacted Section 110 of the Bankruptcy Code.  Section 110 requires bankruptcy petition preparers to take certain specific actions, proscribes other conduct on their part and provides monetary sanctions and injunctive relief for noncompliance.  *See* <u>In re Paysour</u>, 313 B.R. 109, 114 (Bankr. E.D.N.Y.2004).  In <u>In re Landry</u>, the Court outlined the boundaries of conduct of a bankruptcy petition preparer as follows:

> A bankruptcy petition preparer can meet a prospective debtor,
> provide forms or questionnaires for the debtor to complete
> without any assistance from the bankruptcy petition preparer,

> transcribe the information supplied by the prospective debtor
> on the applicable bankruptcy forms without change, correction,
> or alteration, copy the pleadings, and gather all necessary
> related pleadings to file with the bankruptcy court.  The
> bankruptcy petition preparer cannot improve upon the
> prospective debtor's answers, cannot counsel the client on
> options, and cannot otherwise provide legal assistance to the
> prospective debtor, directly or indirectly.  However, to the extent
> the bankruptcy petition preparer provides the limited secretarial-type
> services, the preparer is entitled to receive reasonable compensation.

268 B.R. 301 (Bankr. M.D. Fla.2001).

A.  WTP– USA is a Bankruptcy Petition Preparer.

Section 110(a) of the Bankruptcy Code defines a "bankruptcy petition preparer" as a "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing."  A "person" is defined as an "individual, partnership, and corporation ..." 11 U.S.C. §101(41).  A "document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title."  11 U.S.C. §110(a)(2).  The Respondents have argued that WTP– USA is not a bankruptcy petition preparer as that term is defined in the Bankruptcy Code.  Specifically, they argued that WTP– USA cannot be deemed a bankruptcy petition preparer because it received no compensation directly from Gaftick and therefore did not "prepar[e] for compensation a document for filing."  Respondents' Objections to Certification, June 29, 2005, p. 4.

This argument is disingenuous at best.  The Bankruptcy Code does not require that the bankruptcy petition preparer receive payment directly from the debtor.  Here, the hearing evidence established that WTP– SB forwarded a portion of the fees it received for services rendered to WTP–USA, its franchisor.  Several courts, including one in this district, have under

8

similar circumstances previously found WTP–USA, as franchisor, to be a bankruptcy petition preparer, even though only its franchisee had received payment directly from the debtor.  *See e.g.,* In re Robinson, 313 B.R. 135, 144-45 (Bankr. E.D.N.Y.2004) (finding that WTP–USA was a bankruptcy petition preparer even though debtor paid franchisee and franchisee remitted 25% of the collected fees to the franchisor);  In re Moore, 283 B.R. 287, 294 (Bankr. E.D.N.C.2003); In re Doser, 281 B.R. 292, 303-04 (Bankr.D.Idaho 2002), *aff'd* 412 F.3d 1056 (9th Cir.2005).[2] Furthermore, while not disputed by the Respondents, both WTP–USA and WTP– SB were listed as bankruptcy petition preparers on Gaftick's Statement of Financial Affairs attached to her petition.   Accordingly, the Court finds that WTP–USA is a Bankruptcy petition preparer with regard to Gaftick's bankruptcy petition.

B.  WTP–SB and WTP–USA Can Be Held Vicariously Liable for the Acts of Their Employees.

The Respondents next argued that even if their employees, including Turya, committed acts in violation of Title 11, they can not be held vicariously liable for these actions which they had not "participated in, ratified, or otherwise authorized." *See* Respondents' Objections to Certification, p. 6.   This argument is without merit.   Under New York law, an employer is vicariously liable, under the doctrine of respondeat superior, "for a tort committed by his servant while acting within the scope of his employment."  Riviello v. Waldron, 47 N.Y.2d 297,302, 391 N.E.2d 1278, 418 N.Y.S.2d 300 (1979).  Employers are not excused from liability "merely because their employees, acting in furtherance of their interests, exhibit human failings." Id. at 302.  Instead, the test is "whether the act was done while the servant was doing

---

[2]  In addition, "Courts have rejected attempts to evade the language of the statute by persons claiming that they were not compensated for preparing the documents, but merely were collecting money for other services." 2 Collier on Bankruptcy ¶110.02[1] (Lawrence P. King, ed., 15th ed. 1999).

his master's work, no matter how irregularly, or with what disregard of instructions." <u>Id</u>.

In <u>Riviello</u>, the Court of Appeals identified the following factors to assist courts in determining whether tortious acts of employees are committed within the scope of their employment:

> [1]the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such employee, [4] the extent of departure from normal methods of performance, [and] [5] whether the specific act was one that the employer could reasonable have anticipated.

<u>Riviello</u>, 47 N.Y.2d at 303.   Although all five factors are considered, the fifth factor is generally considered to be the most important. *See* <u>Adorno v. Correctional Services Corp.</u>, 312 F. Supp.2d 505, 516–17 (S.D.N.Y.2004).

In this case, the Movants have adduced enough proof to support a finding that Turya was acting in the scope of his employment when he answered Gaftick's questions regarding the meaning of certain terms contained in the workbook and suggested that she change some of her workbook entries involving exemptions and personal property valuation.  First, all of the Movants' allegations against the Respondents concern Turya's conduct that occurred on the WTP-SB premises while he was working.  In addition, there is no indication that Turya had a practice of acting outside the scope of his employment.  The Court notes that WTP-USA did entrust Turya to sign Gaftick's bankruptcy petition on behalf of "We the People."

The facts also suggest that Turya conducted himself similarly with other employees, thereby fulfilling the third and fourth <u>Riviello</u> factors.  Respondents argued that Turya's conduct was not within the scope of his employment as it departed from WTP-USA's

corporate policy which instructed franchise employees not to answer any legal questions and not to assist customers in filling out their workbooks.   This policy, however, did not appear to be routinely followed by franchise employees working at WTP-USA's storefronts in the New York metropolitan area.   Instead, it appears that the policy was for franchise employees to assist customers in completing their Bankruptcy Workbook.  For example, during the evidentiary hearings, five customers of New York based WTP-USA franchises, including Gaftick, testified that employees at the individual WTP-USA storefront offices chose or assisted them in choosing the exemptions that were inserted into their bankruptcy petitions.   *See* Phyllis Gaftick testimony, Tr. I, pp. 43-55; Chiara Wimberly testimony, Tr. I, p. 169; Dylaleh Rios testimony, Tr. II, pp. 27-28; Claudia Lyons testimony, Tr. II, p. 68; Andria Morris testimony, Tr. II, pp. 107-108. The fact that Respondents claimed there was a corporate policy against rendering legal advise demonstrated that Turya's actions were reasonably foreseeable.   *See* <u>Adorno</u>, 312 F. Supp.2d at 516–17.  Accordingly, the Court finds the Respondents vicariously liable for the alleged acts of Turya.

     C.  The Respondents Have Committed A Violation of Code Section 110(h)(2).

     The Trustee seeks disgorgement of fees from the Respondents under Bankruptcy Code Section 110(h)(2) on grounds that the fees Gaftick paid to them exceeded the value of the services rendered to her.   Subparagraph (h)(2) of Section 110 provides that "[t]he court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee . . .. found to be in excess of the value of services rendered for the documents prepared."  Code Sections 110(h)(2) and (3) authorize the Court, on its own motion or on the motion of the debtor, the chapter 7 trustee, a creditor or the United States trustee, to disallow any excessive fees paid to

the bankruptcy petition preparers  and to order the preparer to turn over the excess to the

bankruptcy trustee.  The application of the Trustee and Gaftick is such a motion and the Court

therefore is called upon to determine whether the fee of Two Hundred Twenty-Nine Dollars

($229.00) the Respondents charged is in excess of the value of the services they provided.

"In deciding whether fees are excessive, the Court must determine the reasonable

value of the services rendered." In re Ali, 230 B.R. 477,483 (Bankr.E.D.N.Y.1999)(citing In re

Murray, 194 B.R. 651,658 (Bank. D.Ariz.1996)).  In making this determination, the Court

proceeds from the premise that bankruptcy petition preparers can only be compensated for

services which they are authorized to perform. In re Graham, 02-81930C-&D, 02-82065C-7D,

2004 WL 1052963,*7 (Bankr. M.D.N.C. February 13, 2004).  Since the Trustee has alleged that

Respondents have engaged in the unauthorized practice of law, the analysis should begin with

this allegation, for no compensation will be awarded for services that constitute the unauthorized

practice of law.

The law of the state where the Bankruptcy Court sits determines whether a

bankruptcy petition preparer has engaged in the unauthorized practice of law.  *See* 11 U.S.C.

110(k), Fed. R. Bank. P. 9010.  *See also,* In re Gaston & Snow, 243 F.3d 599,605 (2d Cir. 2001).

In New York State, only licensed attorneys may engage in the practice of law.  N.Y. Jud. Law.

§478 (McKinney 2004).[3]  Furthermore,  it is well settled that "[t]he giving of legal advice and

counsel, including instructions and advice as to the preparation of legal instruments, constitutes

---

[3] Section 478 of New York's Judiciary law states:

> It shall be unlawful for any . . . person to practice . . . as an attorney-at-law
> . . . or to hold himself out to the public as being entitled to practice law . . .
> without having first been duly and regularly licensed and admitted to
> practice law in the courts of record in this state.

the practice of law." <u>New York County Lawyers' Association v. Dacey</u>, 283 N.Y.S.2d

984,989,28 A.D.2d 161,165 (1st Dep't 1967), *rev'd on other grounds,* 21 N.Y.2d 694, 234

N.E.2d 459, 287 N.Y.S.2d 422 (1967).

   Here, Gaftick testified that after paying WTP– SB Two Hundred Twenty-Nine

Dollars ($229.00) and signing the Bankruptcy Document Preparation Agreement, representatives

of WTP– SB gave her the following documents:  (1) a Customer Information Workbook for her

to fill out for information to be included in her bankruptcy petition, (2) a bankruptcy overview

pamphlet that provided basic information about bankruptcy, (3) a Step-By-Step Guide to the

Bankruptcy Workbook that included, among other things, instructions on how to fill out the

workbook and (4) a list of New York bankruptcy exemptions which paraphrased the exemptions

but never cited to or provided the exact language of the New York statute (collectively referred

as the "Bankruptcy Documents"). *See* Tr. I, pp. 28-44.   Gaftick also testified that when she had

difficulty filling out the workbook, she contacted Turya at WTP– SB's office.  Turya answered

her questions regarding the meaning of certain terms, such as "cash on hand", that were used in

the workbook.  <u>Id</u>. at p. 45.    She described this conversation as follows:

   I explained to Mr. Turya that I did not want to lose the money in
   my bank accounts.  Mr. Turya indicated that as long as I printed
   the letter "R" in the worksheet, next to the bank account
   designation - as opposed to an "S" for surrender - that I would be
   able to retain those funds.

 Gaftick Affidavit at 2.  Gaftick further testified that after she completed the workbook, Turya

reviewed it and explained to her that some of the exemptions that she had chosen were incorrect.

At his direction, she crossed out her initial exemption choices on the petition schedule and wrote

in new ones.  <u>Id</u>. at pp. 88-91.  She explained that Turya also suggested that she change some of

the valuations of her personal property to the price she paid for the property rather than the current value of the property. Id. at pp. 98-99. Gaftick followed this advice as well.

Respondents failed to provide any credible evidence in response to Gaftick's testimony.[4] Respondents offered the testimony of Jason Searns, General Counsel to WTP–USA, Derek Distenfield, Senior Vice President of WTP– USA and Michael Fumia, Vice President of Human Resources of WTP-USA. Each witness described the Respondents' business practices. They claimed that it was the practice of WTP–USA to have its customers fill out the workbooks independently. Id. at pp. 119-125; Transcript of hearing on April 29, 2005 ("Tr. II "), pp. 168-189, 255-58. They further stated that franchise employees were instructed not to answer legal questions of any customer but rather to inform the customer that the supervising attorney on staff could provide general legal information. Tr. I, pp. 120-21,[5] Tr. II, pp. 168-189.

In rebuttal, Charles Harris, Chiara Wimberly, Claudia Lyons, Andria Morris, Dyalelah Rios (collectively the "Rebuttal Witnesses") and Gaftick testified. Each of these witnesses was a customer at franchises of WTP – USA in New York. They described incidents where employees at various WTP– USA storefront offices helped answer questions contained in the workbook and counseled them to change answers. See Andria Morris testimony, Tr. II, pp. 107-08; Dylaleh Rios testimony, Tr. II, pp. 27-28; Gaftick testimony, Tr. I, pp. 43-55; Chiara Wimberly testimony, Tr. I, p. 169; Charles Harris, Tr. I, pp. 194-97; Claudia Lyons testimony, Tr. II, p.68. Andria Morris testified that when she was a customer at the We the People franchise

---

[4] Respondents did not call Turya, who is no longer a WTP– SB employee, as a witness.

[5] According to Searns, WTP– USA no longer uses supervising attorneys to answer customer inquiries in New York. Tr. I, p. 122.

located at 514 Fifth Avenue, Brooklyn, Maria Jinenz, an employee at this store, chose her

exemptions because Morris did not understand them and was too busy with homework for

school. Tr. II at p. 108.   Dyalelah Rios testified that when she filled out her workbook and chose

her exemptions, she relied on the advice provided by Roberta Quartey[6] and James Paitakis[7], both

employees of the WTP–USA franchise located at 92 Willoughby Street in Brooklyn. Id. at pp.

25-26.  Rios further testified that Paitakis told her not to disclose in her schedules that she was

currently involved in a personal injury lawsuit. Id.  Gaftick herself was an articulate witness who

provided credible and understandable testimony about her dealings with Turya; her testimony

was independently corroborated by the Rebuttal Witnesses, each of whom had similarly been

rendered legal advice by non-attorneys at individual franchises in the New York metropolitan

area.

        In addition to this testimony, the Court also has documentary evidence, including

the Customer Information Workbook, bankruptcy overview and Step By Step Guide to the

Bankruptcy Workbook, supporting its decision.   This Court agrees with the various other courts

that these documents alone demonstrate the unauthorized practice of law.   *See* In re Finch, 2004

WL 2272152,*26 (Bankr. M.D.Tenn. 2004); In re Graham, 2004 WL 1052963,*11 (Bankr.

M.D.N.C. 2004); In re Doser, 281 B.R. 292, 303-04 (Bankr.D.Idaho 2002), *aff'd* 412 F.3d 1056

(9th Cir. 2005); (In re Moffett, 263 B.R. 805, 815 (W.D.Kentucky 2001).   These documents

serve to simplify the bankruptcy process by containing advice on how the bankruptcy process

---

[6]  Ms. Quartey was present to testify at the April 29, 2005 hearing, but Mr. Distenfield instructed her to leave
without testifying at the hearing.  Tr. II, p. 132.

[7]  Ms. Rios noted that James Paitakis worked at a different office and that he was working at the Willoughby Street
office because Roberta Quartey was absent.

15

generally works and how the blanks in the workbook should be completed.   However, the act of simplifying the bankruptcy process and forms "leads to the exercise of judgment by the Bankruptcy petition preparers in how best to accomplish that result, which in turn inevitably crosses the line by giving potential debtors guidance and advice on how to fill out the forms."  In re Doser, 281 B.R. at 309.   In addition, these forms may also "lead a debtor to choose incorrectly how to treat his or her property."  In re Graham, 2004 WL 1052963 at *11.   An example of this occurred in the present case when Gaftick was led to claim her cash in her bank accounts as exempt, not realizing that this exemption pertained only to exempting a portion of the "earnings" she had received in the last sixty days.

Although Respondents may not be paid for those acts which constituted the unauthorized practice of law, they may be entitled to compensation to the extent that they performed scrivener-type services.  The Court then must determine what compensation, if any, is reasonable under the circumstances.  In this district and in others, courts have sometimes "found bankruptcy petition preparers' services to be of no value or negative value where those services accomplished little benefit and, in some instances, harmed the debtor or put his or her bankruptcy discharge at risk."  In re Paysour, 313 B.R. 109, 117 (Bankr. E.D.N.Y. 2004); In re Pilot, 286 B.R. 157 (Bankr.C.D. Cal.2002); In re Paskel, 201 B.R. 511 (Bankr. E.D. Ark. 1996), appeal dismissed, 201 B.R. 964 (E.D. Ark. 1996), aff'd 1998 U.S. App. LEXIS 16431 (8th Cir. July 20,1998).  Here, the Respondents' legal advice to choose the exemption under NYCPLR §5205(d)(2) caused Gaftick to have to retain counsel to correct this error on her schedules, confused her creditors and caused them to question her integrity when this matter was revealed at the adjourned 341(a) meeting.  It could have jeopardized Gaftick's discharge if this error had

not been caught and corrected in time.   Accordingly, the Court finds that the services the

Respondents rendered to Gaftick had no value to her.   Pursuant to 11 U.S.C.  §110(h)(2), the

Court will disallow and order the Respondents to turn over the sum of Two Hundred Twenty-

Nine Dollars ($229.00), which Gaftick paid to Respondents,  to the Trustee for return to Gaftick.

In addition pursuant to Section 110(h)(2), Gaftick can exempt these recovered funds.

D.  Respondents Have Committed a Violation of Section 110(g).

In the Application, the Trustee and Gaftick sought an Order finding that

Respondents had violated Section 110(g) of the Bankruptcy Code.  Section 110(g) provides:

> A bankruptcy petition preparer shall not collect or receive
> any payment from the Gaftick or on behalf of the Gaftick for
> court fees in connection with filing the petition.

It is undisputed that WTP– SB received payment from Gaftick of Two Hundred Twenty-Nine

Dollars, of which Two Hundred Nine Dollars represented the filing fee which WTP– SB

delivered to the Clerk of the Bankruptcy Court for the Eastern District of New York when it filed

Gaftick's petition.  Based on the above, the Court finds that WTP– SB has violated Section

110(g) and imposes a fine of Five Hundred Dollars ($500.00) upon WTP– SB for this violation.

E.  Certification to the United States the District Court

Section 110(i) requires a Bankruptcy Court to make a certification to the District

Court in the event a bankruptcy petition preparer  "violates this section or commits any

fraudulent, unfair or deceptive act."  Following such certification, and in the event the debtor, the

trustee, or a creditor makes a motion in the District Court for the imposition of penalties on the

bankruptcy petition preparer, the District Court after a hearing shall order the petition preparer to

pay to the debtor:

17

> (1) . . . (A) the debtor's actual damages;
>      (B) the greater of–
>           (i) $2,000; or
>           (ii) twice the amount paid by the debtor to the
>           bankruptcy petition preparer for the preparer's
>           services; and
>      (C)  reasonable attorneys' fees and costs in moving for
>           damages under this subsection.
>
> (2) If the trustee or creditor moves for damages on behalf of the
>     debtor under this subsection, the bankruptcy petition preparer
>     shall be ordered to pay the movant the additional amount of
>     $1,000 plus reasonable attorneys' fees and costs incurred.

11 U.S.C. §110(i)(1)-(2).  The Court hereby certifies to the District Court that it has found the

Respondents in violation of Sections 110(g) and (h) in part for the reasons stated above.

A broad variety of conduct is covered under the umbrella of "fraudulent, unfair or

deceptive acts." *See* In re Barcelo, 2004 WL 1833245,*6 (Bankr.E.D.N.Y.2004) (finding that

"[i]n light of the common and accepted statutory usage of 'unfair and deceptive,' and the widely

known elements of fraudulent conduct" the general statutory language of Section 110(i) is not

overbroad).  Unfair or deceptive acts generally include any conduct or omissions that is likely to

mislead a reasonable consumer. *See e.g.,* NYGBL §349 (McKinney 2004) (deceptive acts or

practices are "not the mere invention of a scheme or marketing strategy, but the actual

misrepresentation or omission to a consumer"; Bisson v. Ward, 160 Vt. 343,628 A.2d 1256,1261

(1993)("a 'deceptive act or practice' is a material representation, practice or omission likely to

mislead a reasonable consumer."); Connor v. Merrill Lynch Realty, Inc., 220 Ill.App.3d 522, 163

Ill.Dec. 245,251, 581 N.E.2d 196,202 (1991)("a deceptive practice is the concealment,

suppression or omission of any material fact, with intent that others rely upon the concealment,

suppression or omission of such material fact.").

18

Here, Gaftick testified that after reading the advertisement in the newspaper  and viewing the shingle in WTP– SB's storefront,  she believed that the complete fee for the Respondents' services was One Hundred Ninety-Nine Dollars ($199.00).  Tr. I, p. 21.   Her testimony is supported by the Rebuttal Witnesses who were similarly confused by the Respondents' advertising.  Furthermore, a review of the Respondents' brochure establishes that a consumer could reasonably conclude that the complete fee for their services was One Hundred Ninety-Nine Dollars ($199.00).  The advertising brochure expressly stated the price of One Hundred Ninety-Nine Dollars ($199.00) for bankruptcy petition preparation services and there is no other indication, such as a footnote or an asterisk, which would have provided a potential customer with any notice of any additional costs associated with utilizing Respondents' services.

Respondents committed an additional violation when they charged Gaftick Fifteen Dollars ($15.00) for use of a process server, when no such process server was utilized. The Respondents attempted to defend these allegations by stating that the Fifteen Dollar ($15.00) "Process Fee" noted on Gaftick's statement of financial affairs was a mistake and should had read "Court Preparation Fee."   Respondents claimed that in June 2004 they stopped using a process server and had mistakenly failed to omit this term on Gaftick's statement of financial affairs.  Nonetheless, this action constituted a deceptive practice.

Finally, Respondents failed to inform Gaftick that its fee for photocopying services was optional.  Gaftick testified that she was not given the Bankruptcy Document Preparation Agreement, which expressed in small single spaced print that the prospective debtor could choose to have the Respondents make the required photocopies for her, until after she paid them Two Hundred Twenty-Nine Dollars ($229.00), which included the purported fee for

photocopying services.  Tr. I,  pp.28-29, 67-68.   The Respondents' practice of deceiving prospective debtors into believing that the photocopying  fees were not optional is corroborated by the Rebuttal Witness' testimony.  *See* Chiara Wimberly testimony, Id. at p. 163; Charles Harris testimony, Id. at pp. 193-94; Dyaleh Rios testimony, Tr. II at pp. 20-21; Claudia Lyons testimony, Id.  at pp. 63-64; Andria Morris testimony, Id. at pp. 105-06.

The Court finds that the Respondents committed "fraudulent, unfair, and deceptive acts" when they (i) advertised that their bankruptcy services cost One Hundred Ninety-Nine Dollars ($199.00) when in fact their services cost Two Hundred Twenty-Nine Dollars ($229.00); (ii) charged Gaftick Fifteen Dollars ($15.00) for a process server although a process server was not used and (iii) deceived Gaftick into believing that she was required to have Respondents photocopy her bankruptcy petition.  The Court concludes that Respondents committed these acts in violation of Section 110(i) and certifies these findings to the United States District Court for the Eastern District of New York for further and appropriate action.

## CONCLUSION

The Court finds that the services the Respondents rendered to Gaftick had no value and directs that the Respondents shall disgorge Two Hundred Twenty-Nine Dollars ($229.00) to the Trustee for return to Gaftick under Section 110(h)(2) (ii) of the Bankruptcy Code.  The Court further finds that the Respondents collected a money order in the amount of Two Hundred Nine Dollars ($209.00) from Gaftick made payable to the Bankruptcy Court for the filing fee in connection with the Debtor's bankruptcy petition and directs that WTP–SB and WTP–USA shall be fined, jointly and severally, Five Hundred Dollars ($500.00) for this violation of Section 110(g)(1) of the Bankruptcy Code.  The Court finds that the Respondents

committed fraudulent, unfair, and deceptive acts when they (i) advertised that their bankruptcy services cost One Hundred Ninety-Nine Dollars ($199.00) when in fact their services cost Two Hundred Twenty-Nine Dollars ($229.00); (ii) charged Gaftick Fifteen Dollars ($15.00) for a process server although a process server was not used and (iii) deceived Gaftick into believing that she was required to have her petition photocopied by the Respondents. The Court certifies these violations to the United States  the District Court for the Eastern District of New York.

       IT IS SO ORDERED.

Dated:       Brooklyn, New York
             October 31, 2005

                             s/Dennis E. Milton
                             DENNIS E. MILTON
                             United States Bankruptcy Judge